CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

SEP 1 3 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SIERRA CLUB, *et. al.*, | Civil Action No. 7:04CV00591 |
| Plaintiffs, | |
| v. | |
| UNITED STATES FOREST SERV., *et. al.*, | MEMORANDUM OPINION AND ORDER |
| Defendants, | |
| *and* | |
| APPALACHIAN POWER CO., | By: The Honorable James C. Turk<br>Senior United States District Judge |
| Defendant-Intervenor. | |

The plaintiffs, the Sierra Club and the Alliance for the Preservation and Protection of Appalachian Lands (collectively known as "plaintiffs") brought this action against the defendants, the United States Forest Service and the United States Fish and Wildlife Service (collectively known as "defendants") subject to federal question jurisdiction, 42 U.S.C. § 1331, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*; the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*; 16 U.S.C. § 497; and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* This case is before the Court on the defendants' Partial Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for Counts III, VI, V, and VI of the complaint. Upon consideration of the arguments, the Court hereby **Denies** the defendants' motion to dismiss Count IV; **Grants** the defendants' motion to dismiss Count

IV; and **Dismisses** Counts III and V, as requested by the plaintiffs.

## I.

On March 5, 1991, the Appalachian Power Company (d/b/a American Electric Power, "AEP") submitted a special use permit application to the United States Forest Service ("Forest Service") requesting authorization to construct, operate, and maintain a right-of-way for an electrical power line that would traverse through the George Washington and Jefferson National Forests, federal forests located in central and western Virginia and southern West Virginia. The proposed corridor for the power line would cross 11 miles of forest land and affect approximately 291 acres. A path 200 feet wide would be required along most of the power line corridor. The construction of the power line would require the clearing of the forestation along the path. The power line would also come within two miles of the hibernaculum of the Indiana bat, an endangered species.

The AEP application went through the mandated submission and approval process. During the process, the Forest Service issued a final environmental impact statement ("FEIS") as required by the Endangered Species Act, on December 30, 2002. The FEIS examined, among other things, the impact of the proposed power line on the environment. The plaintiffs allege that the Forest Service did not conduct a detailed or thorough investigation before issuing the FEIS. The Forest Service also conducted a biological assessment ("BA") that concluded that the power line would not likely affect the Indiana bat population in an adverse manner. The United States Fish and Wildlife Service ("FWS") concurred with the conclusion of the BA. The plaintiffs allege that the BA is not justified and based on incorrect factual and legal premises. A special use permit for the power line was ultimately granted and issued to AEP.

The Sierra Club and the Alliance for the Preservation of Appalachian Lands ("APPAL"), which are both non-profit environmental and conservation organizations dedicated to the protection of public health and the environment, allege that the interests of its members that use the land in the immediate vicinity of the proposed power line will be adversely affected by the AEP power line right-of-way. Sierra Club alleges that its members that use the land in and adjacent to the power line path for recreational and educational uses will be adversely affected.

APPAL also alleges that its members that use the land in and adjacent to the power line path for recreational uses will be adversely affected. APPAL specifically cites two of its members that live adjacent to the proposed power line path and allege that the construction of the power line will decrease these two members use and aesthetic enjoyment of the land, decrease the value of their private property, and adversely affect their health. APPAL also cites to another of its members and alleges that the proposed power line will adversely affect this member's use and aesthetic enjoyment of the land. Specifically, APPAL alleges that the proposed power line will adversely affect the member's intended continued future excursions to the hibernaculum of the Indiana bat.

## II.

Dismissal under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiffs have voluntarily agreed to the dismissal of Counts III and V of the complaint and, thus, only

3

Counts IV and VI will be reviewed as to whether they state a claim. Before the Court can assess whether each of the Counts state a claim, it must first be determined whether the plaintiffs have standing to pursue this action.

### III.

The basic purpose of the standing doctrine is to ensure that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of a democratic self-government that such separation serves. *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). In order to satisfy the Article III requirements for standing, the plaintiff must show that: (1) He has a suffered an injury-in-fact; (2) The injury is fairly traceable to the challenged action of the defendant; and (3) It is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). The plaintiff bears the burden of establishing injury, traceability, and redressability because it is the party seeking to invoke federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). In addition, an association has standing to bring suit on behalf of its members when: (1) Its members would otherwise have standing to sue as individuals; (2) The interests at stake are germane to the group's purpose; and (3) Neither the claim made nor the relief requested requires the participation of individual members in the suit. *Laidlaw*, 528 U.S. at 181.

At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice; for on a motion to dismiss, we presume that general allegations embrace

4

those specific facts that are necessary to support the claim. *Defenders of Wildlife*, 504 U.S. at 561. Here, the plaintiffs have alleged that its members will be injured because they would suffer adverse health consequences and have their aesthetic and recreational uses of the area lessened (including the viewing of the Indiana bat), caused by the establishment of the AEP right-of-way, and that an order of injunctive relief mandating that the defendants follow special permit issuance regulations and guidelines, will redress their injury. The plaintiffs would have associational standing if its members have individual standing because the other two elements required for associational standing are met. First, the interests at stake in this action are the health of the plaintiffs' members that will live near the power line and destruction of the fauna and flora along the power line path. These interests coincide with the plaintiffs' purpose of the protection of public health and the environment. Second, neither the claims of statutory and regulatory violations by the defendants, nor the relief requested, in this action require any individualized proof and, thus, do not require the participation of individual members of the plaintiffs. Thus, the primary issue that will determine whether the plaintiffs have standing will be whether the plaintiffs' members have or will suffer an imminent and concrete injury-in-fact caused by granting the special use permit for the AEP power line which will be redressed by the relief requested.

The injury-in-fact element requires that the plaintiff suffer an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent. *Defenders of Wildlife*, 504 U.S. at 560. The alleged injury must not be conjectural or hypothetical. *Id.* Environmental plaintiffs adequately allege injury-in-fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened

5

by the challenged activity. *Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). The plaintiffs' allegations that: (1) Its members that currently live near the proposed path of the power line will have their aesthetic utility of the area lessened; and (2) That its members that have visited the Indiana bat and hibernaculum and intend to do so regularly in the future, will be injured by the power line; state cognizable injuries with enough specificity. *See Defenders of Wildlife*, 504 U.S. at 562-63 ("[T]he desire to use or observe animal species [or flora], even for purely aesthetic, is undeniably a cognizable interest for purpose of standing."). It is undeniable that persons that currently reside or travel to an area, and will reside or travel to that area in the future, will suffer an injury-in-fact where the aesthetic purposes of living or traveling to such region is diminished.

In addition, when the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred or proved in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action at issue. *Defenders of Wildlife*, 504 U.S. at 561. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. *Id.* at 561-562. When, however, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. *Id.* at 562. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third-party to the government action or inaction. When that is the case, standing is not precluded, but it is ordinarily substantially more difficult to establish. *Id.*

Although the plaintiffs are not the parties applying for or regulated by the permit,

causation and redressability are found. The plaintiffs state that their injuries will be caused by the construction of the power line by AEP that was granted through an improper permit approval process. Although the grant of a permit to construct and maintain a power line does not technically cause the plaintiffs' injuries, since AEP still has the choice to decide whether to go forward with the actual construction; there is no reason why a party would undertake an expensive and time-consuming process to obtain permission to do an activity unless the party was intending to proceed once the activity was sanctioned. The permit being a necessary step of the power line construction, is a cause of the plaintiffs' injuries. Furthermore, an injunction requiring the defendants to properly follow the regulatory procedures in regard to issuing a permit could redress the plaintiffs' injuries if a different conclusion was reached upon re-examination, whether the conclusion be a denial of the permit or just a revision of the permit's scope. Therefore, plaintiffs have standing and the Court has jurisdiction to hear their claims and can review whether plaintiffs' Counts IV and VI state a claim.

## IV.

The plaintiffs' complaint Count IV alleges that the Forest Service failed to enter into formal consultation with FWS to discuss options to reduce the anticipated adverse effect on endangered species because of the proposed power line, in violation of 16 U.S.C. § 1536 and 40 C.F.R. § 402.14. Section 11 of the Endangered Species Act, 16 U.S.C. § 1540(g), provides that "any person may maintain an action . . . against a government entity, for violations of the ESA." As explained in Section III, the plaintiffs have adequately alleged facts at this stage of the proceedings to support their claim of standing to maintain this action for a violation of the ESA. Furthermore, the Court has the authority to review whether the Forest Service's failure to enter

7

into formal consultation with the FWS was in error. *See* 5 U.S.C. §§ 706(2)(A) & (D) (stating that a court may set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ."). Thus, Count IV does state a claim.

## V.

The plaintiffs' complaint Count VI alleges that the Forest Service did not have the authority to issue the special permit that was ultimately issued to AEP because the granted right-of-way exceeded the acreage limit under the statute that permitted the Forest Service to grant such a permit. The plaintiffs allege that the Forest Service granted the permit by authority conferred by 16 U.S.C. § 497 and that this statute explicitly prohibits the issuance of a permit that grants federal lands, under the statute, in excess of 80 acres. While the plaintiffs' assertion about the limitation of 16 U.S.C. § 497 is correct, Count VI must be dismissed because it does not state a claim since the Forest Service granted, and was allowed to grant, the permit under 43 U.S.C. § 1761.

The Forest Service has the power to grant AEP a special permit under 16 U.S.C. § 497, subject to the acreage ceiling. *See* 16 U.S.C. § 497(c) ("[T]o permit the use and occupancy of suitable areas of land within the national forest, not exceeding eighty acres . . . [for] facilities for industrial or commercial purposes . . . ."). The authority of the Forest Service, however, to issue such special permits is not exclusively governed by 16 U.S.C. § 497; various other statutes also allow the Forest Service to grant special permits. 36 C.F.R. § 251.53 specifically cites the authorities that allow the Forest Service to "issue special use authorizations for National Forest System land." *See* 36 C.F.R. § 251.53(a)-(n).

Here, the special use permit was granted to AEP pursuant to the power vested in the

8

Forest Service under 43 U.S.C. § 1761; *see also* 36 C.F.R. § 251.53(l)(4). 43 U.S.C. § 1761(a)(4) delegates to the Forest Service the authority to grant rights-of-way for "systems for generation, transmission, and distribution of electric energy," which the AEP power line could be classified under. 43 U.S.C. § 1761(a)(4) has no maximum acreage limitation in the grant of rights-of-ways. Thus, the Forest Service could grant the special use permit that it did grant to AEP as long as the regulatory and procedural hurdles were satisfied. The defendants have not violated any mandate of 16 U.S.C. § 497 and, thus, Count VI does not state a claim.

## VI.

An appropriate order shall issue this day, that:

(1) The defendants' motion to dismiss Count IV is **Denied**;

(2) The defendants' motion to dismiss Count VI is **Granted**; and

(3) Counts III and V as requested by plaintiffs, are **Dismissed**.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: This 13th day of September, 2005.

/s/ James C. Turk
The Honorable James C. Turk
Senior United States District Judge

9